**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY (SEPTA), Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CUNNINGHAM), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2013.

Decided July 12, 2013.

Thomas A. Strohmetz, Eagleville, for petitioner.

Leah Cilo, Philadelphia, for respondent James Cunningham.

BEFORE: PELLEGRINI, President Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge McCULLOUGH.

Southeastern Pennsylvania Transportation Authority (Employer) petitions for review of the September 28, 2011 order of the Workers' Compensation Appeal Board (Board), which reversed the order of a workers' compensation judge (WCJ) suspending benefits payable to James Cunningham (Claimant).[1] For the reasons that follow, we reverse.

The facts of this case are not in dispute. On June 11, 1996, Claimant suffered an injury to his right knee in the course and scope of his employment as a first class body mechanic; at the time, Claimant was working under permanent, light-duty restrictions and earning a weekly wage of $825.91.[2] (WCJ's Finding of Fact No. 1.) Employer accepted Claimant's injury and disability through a notice of temporary compensation payable but subsequently issued a notice of workers' compensation denial on July 17, 1996. Claimant filed a claim petition in August 1996. In June 1997, Claimant filed a penalty petition alleging unreasonable contest.

Claimant returned to his pre-injury light-duty work shortly after the June 11, 1996 accident. (Id.) However, on July 7,

1996, Claimant was involved in a nonwork-related car accident; he sustained injuries to his left knee, low back, and left hand and went out of work again on July 12, 1996.(Id.) Claimant underwent surgery for the work-related right knee injury in January 1997, and he returned to his pre-injury light-duty position in April 1997.(Id.)

On December 24, 1998, in a second nonwork-related incident, Claimant was struck by a vehicle and suffered injuries to his left knee, low back, left hand, and left shoulder. (Id.) At that point, Claimant stopped working again, and he began receiving sickness and accident benefits. (R.R. at 129a.) Claimant unsuccessfully attempted to return to work during the week of December 26, 1998, (R.R. at 129a, 143a), but he has not returned to work in any capacity since then. (WCJ's Finding of Fact No. 2.)

On June 6, 2000, following hearings on Claimant's claim petition, the WCJ issued an order granting Claimant's penalty and claim petitions. The WCJ awarded total disability benefits for those periods in which Claimant was disabled from the June 11, 1996 work injury and not otherwise compensated up to the date of his decision and indefinitely thereafter. (R.R. at 135a–36a.)

On August 28, 2006, Employer filed a petition to modify and/or suspend Claimant's benefits, alleging that, as of April 12, 2006, Claimant failed to respond in good faith to jobs referred to him that were within his physical and vocational capabilities. (R.R. at 4a–5a.) During the course of litigation, on January 30, 2007, Employ-

1. The Board's order also affirmed the WCJ's modification of Claimant's benefits, but Claimant did not appeal from the Board's decision.

2. Due to previous injuries, Claimant had been restricted to permanent light-duty work as early as 1992. (WCJ's Finding of Fact No. 8.)

Although the record does not establish with certainty the reason Claimant was restricted to light-duty work, it does reveal that Claimant had two previous work-related injuries to his right knee. (Reproduced Record (R.R.) at 128a.)

er filed a second modification/suspension petition, alleging that Claimant was able to return to work as of November 9, 2005, but for his December 1998 non-work-related injuries. (R.R. at 10a–11a.)

During hearings before the WCJ, Employer presented the testimony of Joseph Bernstein, M.D., a board-certified orthopedic surgeon. Dr. Bernstein opined that Claimant's right knee had recovered sufficiently that Claimant was capable of performing sedentary work as of November 9, 2005, and that the only cause of Claimant's continuing disability was the non-work-related December 1998 accident. (WCJ's Finding of Fact No. 5.)

Employer also presented the testimony of Michael Smychynsky, a vocational consultant, forensic economist, and certified rehabilitation counselor, who conducted a vocational evaluation of Claimant in February 2006. Smychynsky testified that he located four open and available positions that would have provided Claimant with wages of up to $400 per week. According to Smychynsky, Claimant went to each of the interviews but only put his name and telephone number on the applications, and, at the conclusion of two of the interviews, began "swearing" and "threatening" people. (WCJ's Finding of Fact No. 7.)

Claimant presented the testimony of Ronald Greene, M.D., his treating physician since 2002. Dr. Greene testified that Claimant was not capable of returning to work due to the condition of his right knee. On cross-examination, he acknowledged that he had not reviewed Claimant's treatment records from four previous surgical procedures on Claimant's right knee, nor any records in connection with Claimant's December 1998 accident. (WCJ's Finding of Fact No. 11.) Claimant also presented the testimony of Donald Jennings, a licensed psychologist and certified vocational expert, who testified that Claimant's limited reading, writing, and spelling abilities accounted for his minimal responses on the employment applications. However, on cross-examination, Dr. Jennings acknowledged that the only reason Claimant stopped working for Employer was the December 1998 nonwork-related accident.

Finding Dr. Bernstein's testimony to be more credible than the testimony of Dr. Greene, the WCJ concluded that Employer met its burden of proving that Claimant's work-related injury had resolved to the point that he could perform sedentary work but for his non-work-related injuries, which "rendered him incapable of all possible work activity." (WCJ's Conclusions of Law Nos. 2, 6.) The WCJ determined that Employer notified Claimant of his release to sedentary work and referred Claimant to four positions that were within his vocational and physical capabilities and would have paid $400 per week, but Claimant failed to pursue the positions in good faith. (WCJ's Conclusion of Law No. 4.) Accordingly, the WCJ granted Employer's modification petition and reduced Claimant's benefits for the period of April 12, 2006 to January 26, 2007. In addition, the WCJ found that Claimant's non-work-related injuries rendered him incapable of all possible work activity and suspended Claimant's benefits as of January 26, 2007.

Claimant appealed both the modification and suspension of benefits. The Board affirmed the WCJ's decision to modify Claimant's benefits, concluding that Claimant had waived that argument. However, relying on *Struthers Wells v. Workers' Compensation Appeal Board (Skinner)*, 990 A.2d 176 (Pa.Cmwlth.2010), the Board agreed with Claimant that the WCJ erred in suspending Claimant's benefits because Employer failed to establish the availability of a job equal to or greater than Claimant's pre-injury weekly wage of $825.91.

Thus, the Board reversed that portion of the WCJ's decision.

■ On appeal to this Court,[3] Employer argues that it is not required to demonstrate job availability given that Claimant's non-work-related injuries are totally disabling.[4] We agree.

Suspension of benefits is governed by section 413 of the Workers' Compensation Act (Act).[5] In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), our Supreme Court interpreted section 413 of the Act as follows:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

■ Generally, a suspension of benefits is appropriate where the employer es-tablishes that the claimant has recovered all of his or her earning power; otherwise, benefits are only modified. *309 Nissan v. Workers' Compensation Appeal Board (Horowitz)*, 819 A.2d 126 (Pa.Cmwlth. 2003). The employer has the burden of proving that the claimant's work-related injury has improved sufficiently for the claimant to return to work and that a job the claimant is capable of performing is available to the claimant; once the employer meets this burden, the burden shifts to the claimant to demonstrate that he or she responded to the job offer in good faith. *Darrall v. Workers' Compensation Appeal Board (H.J. Heinz Company)*, 792 A.2d 706 (Pa.Cmwlth.2002).

However, in *Schneider, Inc. v. Workers' Compensation Appeal Board (Bey)*, 560 Pa. 608, 747 A.2d 845 (2000), our Supreme Court held that the employer was not required to show job availability where the claimant was totally disabled by non-work-related conditions. The claimant in *Schneider* suffered a work-related injury to his head and neck. While receiving total disability benefits for the work injury, the claimant was involved in a non-work-related incident and suffered severe brain damage and paralysis, leaving him permanently unable to work in any capacity. Considering that the claimant's serious, non-work-related injuries prevented him

---

3. Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Employer notes that the parties have resolved this matter by way of a Compromise and Release Agreement but that Employer can seek recovery from the Supersedeas Fund if it prevails in this appeal.

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772, which states as follows:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred or has temporarily or finally ceased.

from returning to work, the court concluded that it would be unreasonable to require the employer to present evidence of job availability. The court reasoned that requiring the employer to "[show] that a sedentary or light-duty position is available to [the claimant] would be an exercise in futility by virtue of [the claimant's] physical condition, and we can see no valid point in requiring such a showing." *Id.* at 617, 747 A.2d at 850.

Employer contends that the holding in *Schneider* applies to the facts here, and we agree. Although we recognize that Claimant's injuries are not as severe as the claimant's injuries in *Schneider,* the evidence supports the WCJ's finding that Claimant's non-work-related injuries rendered him incapable of all possible work activity. Like the claimant in *Schneider,* Claimant was involved in a non-work related accident that left him totally disabled. Significantly, in this case, Claimant had successfully returned to his pre-injury position 20 months earlier. Thus, the record amply supports the WCJ's conclusion that Claimant's work injury had resolved to the point where he could perform sedentary work but for his non-work related injuries. Under the circumstances, where Claimant's non-work-related injuries have rendered him incapable of all possible work activity, we believe that it would be unreasonable to require Employer to present evidence of available jobs. *Schneider.*

Our decision is not inconsistent with *Struthers Wells,* where this Court declined to extend the holding in *Schneider* to excuse the employer from providing the claimant with a notice of ability to return to work as required by section 306(b)(3) of the Act, 77 P.S. § 512(3). There, the employer sought suspension of the claimant's benefits on the basis that his work-related back injury had resolved to the point that he was released for sedentary work.

However, the claimant also suffered from a number of non-work-related conditions that were the sole cause of the claimant's inability to return to work. Relying on *Schneider,* the employer sought to suspend the claimant's benefits but did not send him the required section 306(b)(3) notice. We rejected the employer's argument and held that *Schneider* did not relieve the employer of its obligation to provide the claimant with the notice required by section 306(b)(3) of the Act. Because *Struthers Wells* was decided based on lack of notice, its holding is not applicable here, and the Board erred in relying on that decision to reverse the WCJ's order.

Accordingly, we reverse.

### *ORDER*

AND NOW, this 12th day of July, 2013, the September 28, 2011 order of the Workers' Compensation Appeal Board is hereby reversed.